UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of Southwest Corporate Federal Credit Union and Members United Corporate Federal Credit Union,<br><br>                                              *Plaintiff*,<br><br>         v.<br><br>BARCLAYS CAPITAL, INC.,<br><br>                                              *Defendant*. | Case No. 13-cv-6727 (DLC) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
SETTLING PARTIES' JOINT MOTION FOR A BAR ORDER**

**PRELIMINARY STATEMENT**

The Proposed Contribution Bar Order sought jointly by NCUA[1] and Barclays is materially identical to orders sought by other defendants in similar RMBS securities cases, including by RBS in the *FHFA* actions. It is an appropriate measure to facilitate the resolution of NCUA's claims against settling defendants (here, Barclays) while fully protecting the interests of other Defendants against which NCUA continues to litigate (here, Goldman and RBS). No one disputes that the Proposed Order puts Goldman and RBS in a position *at least* as favorable as their position would have been if NCUA and Barclays had never settled at all. Indeed, the Proposed Order is even more favorable to Goldman and RBS than is the status quo, because it allows them to reduce any recovery NCUA obtains against them at trial by an amount at least proportionate to Barclays' share of responsibility for NCUA's damages. Under governing law, Defendants can ask for no more. That is presumably why RBS does not object to the substantive provisions of the Proposed Order at all.

Goldman (which does object) argues primarily that it is entitled to see how NCUA and Barclays allocated the settlement amount to the particular Overlapping Securities that will be affected by the Proposed Order. As a matter of law, that is no basis for an objection to the Proposed Order: the allocation need not be disclosed because Goldman (whose interests are fully protected by the proportionate-share reduction) has no right to challenge it. Goldman provides no basis for judicial inquiry into the fairness of the valuation that NCUA and Barclays have used for particular claims and will suffer no prejudice from obtaining that information at a later date.

---

[1] Abbreviated terms such as "NCUA," "Barclays," "Goldman," "RBS," and "Overlapping Securities" have the meanings given in the opening memorandum (at 1 & nn.1-4). Goldman's opposition is cited as "Goldman Opp." RBS's limited opposition is cited as "RBS Opp." NCUA has filed substantially identical versions of this reply in the *Barclays Kansas Action*, *Barclays New York Action*, *RBS Kansas Action*, and the *Goldman California Action*. Barclays has partially joined in this reply in cases to which it is a party.

Nor can Goldman support its claim that NCUA has "skewed" past settlements to reduce allocations to overlapping Certificates. That incorrect contention rests on two mistakes. *First*, Goldman misrepresents NCUA's previous disclosures by erroneously asserting that NCUA allocated zero settlement dollars to certain Certificates. *Second*, Goldman fails to distinguish claims that actually formed the basis for NCUA's settlement negotiations from claims that were included in a settlement agreement but on which NCUA never brought suit. Those basic errors are at least in part because, until its opposition last week, Goldman never raised any concern about past settlement allocations, even though NCUA provided information about those allocations five months ago. In all events, Goldman offers no support for its claim that past allocations (even if "skewed") provide a legal basis for challenging the Proposed Order in light of the proportionate-share provision.

Unlike Goldman, RBS does not object to the substantive provisions of the Proposed Order; nor does it suggest that it has any right to challenge the Settling Parties' allocation of settlement funds to particular Certificates. Its "Limited Opposition" consists only of a procedurally improper attempt to raise a discovery dispute. RBS argues that it should receive disclosure of the allocations for Overlapping Securities right away, rather than after summary judgment. That argument rests on a mischaracterization of the parties' earlier agreement about disclosure of previous settlement allocations and is in any event meritless.

**ARGUMENT**

**I.     The Proportionate-Share Provision of the Proposed Contribution Bar Order Fully Protects the Non-Settling Defendants**

**A.     Goldman Has No Legitimate Interest in Challenging NCUA's and Barclays' Allocation of the Settlement**

The primary dispute over the Proposed Order is whether Goldman is entitled to scrutinize and challenge the fairness of the Settling Parties' allocation of their agreed settlement to particular Overlapping Securities. As the Settling Parties showed in their opening memorandum, Goldman is

not entitled to do so because its interests are already fully protected by the terms of the Order. *See* Exh. A, at 4 (providing a judgment credit "that is the greater of" the amount allocated in the settlement or "the proportionate share of Barclays Capital's fault as proved at trial"). As then-Judge Sotomayor explained in *Gerber v. MTC Electronic Technologies Co.*, 329 F.3d 297 (2d Cir. 2003), "no . . . fairness hearing is necessary" where "the non-settling defendants' credit will be the *greater* of the proportionate fault or the settlement amount," because such a provision standing alone "adequately compensates the non-settling defendants for their indemnity and contribution claims." *Id.* at 306; *see also In re Greektown Holdings, LLC*, 728 F.3d 567, 576 n.7 (6th Cir. 2013) (discussing *Gerber* and other authority holding that "no evidentiary fairness hearing is necessary" where a bar order contains a "judgment reduction [provision that] calls for . . . a proportionate fault method"). The Ninth Circuit's decision in *In re Consolidated Pinnacle West Securities Litigation/RTC-Merabank Litigation*, 51 F.3d 194 (9th Cir. 1995), and Judge Lungstrum's decision in *Aks v. Southgate Trust Co.,* 1992 WL 401708 (D. Kan. Dec. 24, 1992), both of which approved the use of proportionate-share provisions, point to the same conclusion; so do Judge Cote's bar orders in *FHFA* in favor of RBS and Barclays, which tracked the orders approved in *Gerber*.

Goldman's attempt to distinguish NCUA's cases fails. It argues that they did not involve allocations of amounts between overlapping and non-overlapping securities. Even Goldman concedes (at 14-15), however, that Judge Cote's bar orders in favor of RBS and of Barclays in the *FHFA* cases involved just such allocations. In any event, Goldman's purported distinction is meaningless. In *any* contribution-bar scenario, a non-settling defendant's concern is that the settlement amount will be too low; that the non-settling defendant will therefore have to pay an excessive share of the plaintiffs' losses; and that the bar order will prevent the non-settling defendant from recovering that excess back from the settling defendant. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1230 (9th Cir. 1989) (discussing the drawbacks of a pure "offset scheme"). The

- 3 -

proportionate-share provision in the bar order resolves that problem by eliminating any possibility that the non-settling defendant will have to pay more than its fair share. *See Gerber*, 329 F.3d at 303; *Franklin*, 884 F.2d at 1231. That is true regardless of whether the non-settling defendant expresses concern about a total settlement amount or about a particular allocation; in either case, the concern is resolved by the proportionate-share provision. So long as there is no possibility that NCUA's settlement with Barclays will result in Goldman paying NCUA more than Goldman's fair share of NCUA's losses (and under the Proposed Order, there is no such possibility) then Goldman has no right to a hearing at which to contest the Settling Parties' allocation of the settlement amounts.

None of the cases on which Goldman relies (at 9-11) are to the contrary. *In re Masters Mates & Pilots Pension Plan & IRAP Litigation*, 957 F.2d 1020 (2d Cir. 1992), disapproved a contribution bar under which the non-settling defendant could have received a judgment credit of *less* than a proportionate share of liability. *See id.* at 1029. *In re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008), followed *Gerber* in part, *see id.* at 670-71, and thus suggests if anything that the Ninth Circuit would be likely to adopt *Gerber*'s approach in its entirety. Judge Cote's opinion in *In re WorldCom, Inc. ERISA Litigation*, 339 F. Supp. 2d 561 (S.D.N.Y. 2004), acknowledged and applied the rule that no fairness hearing is required where a bar order incorporates a proportionate-share provision. *See id.* at 569.[2] None of those cases suggest that Goldman has a right to a hearing at which it may challenge the fairness of NCUA's settlement with Barclays or its allocation of value to particular claims. And

---

[2] Goldman also cites (at 10) *In re Lendvest Mortgage, Inc.*, 42 F.3d 1181 (9th Cir. 1994), but that case did not involve a contribution bar order at all. Instead, it involved a bankruptcy court's review of a settlement of preferential transfer claims, with no procedural mechanism comparable to the proportionate-share provision to protect the interests of non-settling parties. It is thus unpersuasive here. The same applies to the other cases Goldman relegates to a footnote (at 10 n.10).

because Goldman has no right to contest the Settling Parties' claim allocation, it has no legitimate interest in learning immediately what that allocation is.[3]

The Settling Parties by contrast (especially NCUA) have a legitimate interest in keeping their allocation confidential – including, at least for now, confidential from the Non-Settling Defendants. NCUA's allocations reflect the amounts it was willing to accept from a co-underwriter for certain claims that it is presently litigating against Non-Settling Defendants (here, Goldman and RBS). In the near future, many other things will happen (such as other settlement agreements, expert depositions, and summary judgment motions) that will likely change those valuations. But as of this moment, it would prejudice NCUA's negotiating position to disclose that particular information to Defendants immediately. Defendants, by contrast, suffer no prejudice by not learning the information until closer to trial.

### B. Goldman's Assertions About NCUA's Prior Settlement Allocations are Irrelevant and Incorrect

Goldman devotes much of its opposition to irrelevant – and factually incorrect – assertions that NCUA's previous settlement allocations were "skewed" in a way that purportedly disadvantaged non-settling defendants.[4] Those assertions are legally irrelevant for the reasons already given: even if the Settling Parties had allocated an unfairly low amount of the Barclays settlement recovery to the Overlapping Securities, Goldman would not be injured. In addition to being irrelevant, Goldman's assertions about the reasons for NCUA's past settlement allocations are also quite misconceived.

---

[3] Goldman argues in the alternative (at 14-15) that it should be permitted to learn the allocation at the time of the pretrial orders in its New York and California actions, in case the amounts may affect its trial strategy in either of those cases. Judge Cote's previous bar orders in *FHFA* provided expressly for such disclosure at such a time. The Settling Parties do not object to the inclusion of a similar express provision in the Proposed Order, which would eliminate any conceivable prejudice by providing allocation information to Goldman well before its trial dates. The Settling Parties can submit a revised Proposed Order if that would be helpful to the Courts.

[4] Barclays does not have information related to, and therefore does not join in, the arguments contained in Parts I.B or Part II of this reply.

NCUA disclosed the past allocation information on which Goldman relies to all Defendants in June 2015.[5]  No Defendant raised any concerns about any of those allocations with NCUA before Goldman filed its opposition to the Proposed Order.  Had Goldman's counsel done so, they would have learned their suspicions were incorrect, and their accusations unwarranted.

*First*, Goldman is simply wrong when it states that NCUA allocated zero settlement dollars to certain claims ███████████████████  Specifically, Goldman represents that NCUA allocated zero settlement dollars to ███████████████████████████████ ███████████████ and also allocated zero settlement dollars to ██████████████ ████████████████████████████  That is false.  NCUA never disclosed any allocation for those Certificates because they are not at issue in any of these coordinated cases.  *See supra* note 5.[6]  If Goldman wanted to know why there was no information about those particular allocations in NCUA's June 15 disclosure, it could and should have asked NCUA any time between then and the present.[7]  Contrary to Goldman's representations, NCUA's allocations as to those purchases by those Credit Unions were neither zero nor *de minimis*.

---

   [5]   In particular, NCUA disclosed its internal allocations for any overlapping Certificates (that is, Certificates that were at that time being litigated against Defendants and that also had been included in past settlements).  *See* Goldman Exh. 1, at 8 (explaining that response is limited "to Certificates at issue in the NCUA Action"); *see also id.* at 6 (objecting to Defendants' interrogatory as "overly burdensome in that it seeks detailed information regarding the purchases of . . . RMBS Certificates . . . [that] are not at issue in this litigation").

   [6]   ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

   [7]   Throughout these cases, the Courts have denied untimely discovery requests where parties "ha[ve] shown no cause for . . . delay."  *E.g., NCUA v. Morgan Stanley & Co.*, No. 13-cv-6705 (S.D.N.Y), ECF No. 314, at 3-4; *see id.*, ECF No. 224, at 4 (requests for more discovery must "explain[] why the request is timely and could not have been made earlier").

*Second*, Goldman points to relatively small allocations of settlement amounts to purchases of certain overlapping Certificates.  But Goldman fails to mention that those purchases were not part of any complaint that NCUA filed against the past-settling Defendants.[8]  When NCUA has negotiated RMBS settlements, including settlements in these coordinated cases, it has come to the bargaining table with an identified set of claims that it is asserting against the settling defendant (such as the claims NCUA had already filed against JP Morgan and its affiliates); or, in some pre-suit negotiations (such as with Bank of America) claims that it planned to assert.  In some instances, however, Defendants have negotiated a broader release of *additional* claims that NCUA had not asserted (or, in pre-suit negotiations, did not intend to assert) against the settling Defendant on behalf of the Credit Unions.[9]  Where that has occurred, allocating *de minimis* amounts of the settlement recovery to such additional claims is reasonable and appropriate, because the release of those claims did not contribute materially to the total settlement recovery.

## II.     RBS Has No Right to Immediate Discovery of the Settlement Allocations

RBS, unlike Goldman, does not object to the entry of an order barring its claims for contribution and indemnity.  *See* RBS Opp. 2 n.3.  RBS does, however, raise a procedurally improper discovery dispute:  it seeks an order compelling NCUA to disclose its allocation of damages to the Overlapping Securities immediately.[10]  If the Courts (or Judge Lungstrum and Judge O'Hara)[11]

---

[8]   [redacted]

[9]   For various reasons, NCUA did not bring claims for every single RMBS purchased by the Credit Unions from numerous Defendants.

[10]   An order compelling production should be sought, if at all, by motion to compel rather than in an opposition to a motion seeking other relief. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").

[11]   RBS states that its filing is directed solely to Judge Lungstrum.  *See* RBS Opp. 2 n.2.  But RBS is objecting to a motion that the three Courts together ordered to be briefed jointly; and in

entertain RBS's unconventional motion to compel, they should deny RBS's request because it is based on a mischaracterization of the parties' prior agreement concerning the production of information about earlier settlements, and because such discovery is premature.

As RBS observes, the parties negotiated this issue extensively in the early part of the year. RBS's original position was that it was entitled to see all of NCUA's prior settlement agreements. *See* RBS Exh. A, at 10.  NCUA did not agree that any information about prior settlements was then discoverable.  As part of a compromise, NCUA offered to answer a formal interrogatory that would include its internal allocations of past settlements, provided that RBS would not seek any further discovery beyond the interrogatory.  *See id.* at 6.  RBS refused to agree to that condition, *see id.* at 3, and NCUA offered as a further compromise to answer the interrogatory provided that "no further discovery . . . regarding NCUA's settlements will occur until after summary judgment is fully briefed," *see id.* at 2.  NCUA further objected to "piecemeal discovery" of its settlement amounts as "inefficient and unnecessary," and reserved its right to "challenge any further discovery that Defendants seek at the appropriate time."  *Id.*  RBS responded by agreeing to "defer additional discovery as it relates to the calculation of an offset for settlement proceeds NCUA has obtained to date until after March 25, 2016."  *Id.* at 1.  NCUA then agreed to answer RBS's interrogatory.  *See id.*  When NCUA served its answer, it expressly preserved its objection that set-off discovery was "premature until liability and damages had been established" and stated that it had "agreed to respond to this interrogatory now based on Defendants' agreement not to seek any additional set-off discovery until after summary judgment."  Goldman Exh. 1, at 6.

---

doing so is relying heavily on interrogatories issued jointly by all Defendants under § 7(b) of the Master Discovery Protocol in these coordinated cases.  Presumably if NCUA has an obligation to provide additional information under that joint interrogatory now, it has that same obligation to all Defendants (not just RBS) and as to overlapping Certificates in all coordinated cases (not just in the *RBS Kansas* Action).  That said, NCUA has never objected – and does not now object – to the method the Courts may choose to resolve this issue, whether together or individually.

NCUA thus – contrary to RBS's claims (at 6) – expressly preserved its objection that set-off discovery was premature and put RBS on notice that it would not agree to produce information on a piecemeal basis. Those objections are well-founded. Inquiry about prior settlements for purposes of establishing a setoff against a potential future verdict is premature during ordinary fact discovery. *See Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982) (refusing discovery into a settlement agreement because it "would not be evidence relevant to any issue in this case other than the ministerial apportionment of damages, a mathematical computation which the Court rather than the jury will perform").[12] Further, NCUA had a good reason for agreeing as a compromise to disclose allocations about two-year-old settlements – which offer little insight into NCUA's current valuation of its claims after extensive discovery and litigation – while refusing to make ongoing disclosures of settlement allocations that could affect ongoing negotiations.

RBS also incorrectly argues (at 6-7) that because NCUA has publicly disclosed the aggregate amount of its settlement with Barclays, it cannot assert a confidentiality interest in the particular amounts allocated to particular Certificates. In addition to serving as liquidating agent for each of the failed Credit Unions that brought claims in these coordinated cases, the NCUA Board[13] serves in a separate capacity as head of a federal agency that administers two related public funds.[14] Those

---

[12] *Accord Burlington v. News Corp.*, 2015 WL 2070063, at *4 (E.D. Pa. May 4, 2015) (following *Bottaro*; observing that "[m]any courts" have reached the same conclusion); *Wagner v. Circle W Mastiffs*, 2013 WL 4479070, at *4 (S.D. Ohio Aug. 19, 2013) ("[C]ourts . . . have delayed disclosure of settlement agreements until after trial because set-off is not an issue to be addressed until after the entry of a verdict."); *Polston v. Eli Lilly & Co.*, 2010 WL 2926159, at *2 (D.S.C. July 23, 2010) (refusing to "order the disclosure of the amount of [a prospective setoff] credit until a verdict finding liability . . . has been reached"); *ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, at *3 (S.D.N.Y. Feb. 10, 2000) (refusing to compel production of a settlement agreement because setoff "does not need to be addressed at the present time" and could be resolved "after trial").

[13] The NCUA Board has three members, each appointed by the President and confirmed by the Senate. 12 U.S.C. § 1752a(b).

[14] Specifically, the National Credit Union Share Insurance Fund and the Temporary Corporate Credit Union Stabilization Fund.

public funds stand as claimants against the liquidated Credit Unions for billions of dollars paid on the Credit Unions' behalf.  *See* 12 C.F.R. § 709.5(b).  Because of those multiple capacities, and of the importance of these cases to thousands of credit unions and more than a hundred million credit union members nationwide, the NCUA Board has made the judgment that the public should be informed about the overall progress of NCUA's efforts to remedy the damage that Defendants' defective RMBS have caused the credit union system.  That public disclosure provides the Non-Settling Defendants with more information about NCUA's settlements than they could expect if facing some other private adversary.  But RBS does not and cannot explain why that limited disclosure should require NCUA to give up its legitimate interests in preserving the confidentiality of additional details such as specific allocations to specific claims that NCUA is continuing to litigate.  Indeed, RBS's very interest in those details shows that it believes it will obtain an advantage by knowing them now (when they are relevant only to settlement strategy) rather than months before trial (when they might become relevant to a judgment credit).

Notably, FHFA, a similarly situated government agency, likewise disclosed its total settlements with defendants like RBS,[15] but sought to keep individual allocations confidential.  RBS agreed to that procedure (and benefited from the settlement it enabled) without raising its current objections.  It offers no explanation for its inconsistent position here.  In sum, like Goldman, RBS has not demonstrated any legitimate interest in immediate access to confidential allocations; unlike Goldman, RBS does not even advance the (meritless) contention that it needs to see that information to formulate a position on the Proposed Order.  Its request should thus be denied.

## CONCLUSION

The Settling Parties respectfully request that the Courts enter the Proposed Order.

---

[15] *See* FHFA, *FHFA Announces Settlement with RBS* (June 19, 2014), http://www.fhfa.gov/Media/PublicAffairs/Pages/FHFA-Announces-Settlement-with-RBS.aspx.

Dated: November 20, 2015                                   Respectfully submitted,


 /s/ Frederick R. Kessler                                   /s/ Barry Fischer*
David H. Wollmuth                                          Barry Fischer
Frederick R. Kessler                                       THE BARRY FISCHER LAW FIRM LLC
Steven S. Fitzgerald                                       555 Fifth Avenue, Suite 1700
Ryan A. Kane                                               New York, NY 10017
WOLLMUTH MAHER & DEUTSCH LLP                               Tel: (212) 840-9300
500 Fifth Avenue, 12th Floor                               Fax: (212) 682-7060
New York, NY 10110                                         bfischer@bflf-us.com
Tel: (212) 382-3300
Fax: (212) 382-0050                                        *Attorneys for Defendant Barclays Capital Inc.*
dwollmuth@wmd-law.com
fkessler@wmd-law.com                                       * Pursuant to this Court's ECF Rule 18.5(b),
sfitzgerald@wmd-law.com                                    counsel for NCUA represents that counsel for
rkane@wmd-law.com                                          Barclays has consented to the placement of his
                                                           electronic signature on this document. As
David C. Frederick                                         explained above (at 5 n.4), Barclays does not
Wan J. Kim                                                 have information related to, and therefore does
Gregory G. Rapawy                                          not join in, the arguments contained in Parts
Andrew C. Shen                                             I.B or Part II of this reply.
KELLOGG, HUBER, HANSEN, TODD,
EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
dfrederick@khhte.com
wkim@khhte.com
grapawy@khhte.com
ashen@khhte.com

George A. Zelcs
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel: (312) 641-9760
Fax: (312) 641-9751
gzelcs@koreintillery.com

- 2 -

Stephen M. Tillery
Steven M. Berezney
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Tel:  (314) 241-4844
Fax:  (314) 241-3525
stillery@koreintillery.com
sberezney@koreintillery.com

*Attorneys for Plaintiffs*
*National Credit Union Administration Board*